IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | | |
|---|---|---|
| JESSICA RENEE CHANEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 2:15-12556 |
| | ) | |
| CAROLYN. W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Orders entered August 21, 2015, and January 5, 2016 (Document No. 4 and 13.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Jessica Renee Chaney (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on January 30, 2012 (protective filing date), alleging disability as of January 25, 2012, due to panic disorder with agoraphobia and anxiety. (Tr. at 20, 179, 180-88, 189-97, 213.) The claims were denied initially and upon reconsideration. (Tr. at 20, 76-81, 82-87, 88-89, 90-96, 97-103, 104-05, 106-08, 116-18, 120-22, 123-25.) On October 17, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 130-31.) A hearing was held on January 27, 2014, before the Honorable Jack Penca. (Tr. at 35-75.)   By decision dated March 21, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-30.) The ALJ's decision became the final

decision of the Commissioner on July 15, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on August 20, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

3

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, January 25, 2012. (Tr. at 22, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "panic disorder and generalized anxiety disorder," which were severe impairments. (Tr. at 23, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity to perform a full range of work at all exertional levels, with the nonexertional limitation that she "have only occasional interaction with co-workers and the public in a position that does not require travel." (Tr. at 24, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 28, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as a night cleaner, a non-postal mail clerk, and a folder, at the unskilled, light level of exertion. (Tr. at 28-29, Finding No. 10.) On this basis, benefits were denied. (Tr. at 29, Finding No. 11.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, the Fourth Circuit Court of Appeals defined substantial evidence as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

5

a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on August 5, 1983, and was 30 years old at the time of the administrative hearing on January 27, 2014. (Tr. at 28, 39-40, 180, 189.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 28, 212, 213-14.) In the past, she worked as an automotive teller machine servicer. (Tr. at 28, 40-41, 70-71, 214.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

The record contains treatment notes from Westbrook Health Services from June 7, 2010, through March 31, 2011. (Tr. at 284-89.) On June 7, 2010, Claimant presented to Dr. Amelia McPeak, D.O., with an anxious mood, a constricted affect, and fair insight and judgment, but intact attention and concentration, intact thought processes, a cooperative attitude, and normal behavior. (Tr. at 278-79.) Dr. McPeak diagnosed generalized anxiety disorder and changed her Effexor to Cymbalta based on symptoms of depression and worsening anxiety. (Id.) On August 9, 2010, Claimant denied any symptoms of severe depression or low mood and reported mostly significant

anxiety regarding traveling. (Tr. at 280.) Dr. McPeak noted that Claimant was "psychiatrically stable right now on her current medications, with no severe depression or low mood." (Id.) Claimant reported on September 20, 2010, that she remained paralyzed and stuck in her feelings of anxiety and fear. (Tr. at 282.) Dr. McPeak noted that Claimant had a lot of symptoms of anxiety and encouraged her to comply with Cymbalta 90mg and to engage in psychotherapy. (Id.)

On October 18, 2010, Dr. McPeak noted that although Claimant continued to take 60mg as opposed to the prescribed 90mg, her anxiety was "under the best control that it ever has been." (Tr. at 284.) On February 28, 2011, Claimant reported continued anxiety, with feelings of having been very tense, nervous, and difficulty driving due to anxiety. (Tr. at 286.) Dr. McPeak noted that Claimant presented with good eye contact, mood, affect, insight, judgment, and reality testing. (Id.) She prescribed BuSpar due to Claimant's continued anxiety. (Id.) On March 31, 2011, Claimant denied any feelings of depression or anxiety and mental status exam essentially was normal. (Tr. at 288.) Dr. McPeak noted that Claimant was stable on current medications. (Tr. at 289.)

On June 20, 2011, Claimant presented to Dr. Ryan D. Lowers, M.D., for complaints of anxiety, panic attacks, and IBS. (Tr. at 290-93.) Claimant reported that her anxiety and panic attacks were relieved by medications and that her anxiety was worse when driving a vehicle and around crowds of people. (Tr. at 290.) Dr. Lowers noted that Claimant's panic disorder and anxiety were not well controlled and changed her medication to Klonopin and Pristiq. (Tr. at 292.) On August 3, 2011, Claimant presented for a follow-up exam and reported continued severe anxiety and panic attacks, which were relieved by medications. (Tr. at 298.) Dr. Lowers noted agoraphobia, anxiety driving a car, and an avoidance of traffic. (Id.) Claimant reported that Xanax worked best. (Id.) Dr. Lowers found that Claimant's anxiety was stable with the current medication, which he did not change. (Tr. at 300.)

On August 10, 2011, Claimant presented to Dr. Priscilla Levitt, Ph.D., from the Counseling

and Wellness Center. (Tr. at 361.) Dr. Levitt noted a 12-year history of panic attacks that were moving towards agoraphobia. (Id.) Treatment consisted of breathing for relaxation and calming, and Dr. Levitt noted that she would do hypnosis and psychotherapy. (Id.) Dr. Levitt noted that Claimant was unable to attend church, drive more than a few blocks, or stay alone. (Tr. at 362.) She assessed a GAF of 45. (Id.)

On October 12, 2011, Claimant presented to Dr. Liza Schaffner, M.D., at the Counseling and Wellness Center, upon referral by Dr. Lowers. (Tr. at 321-25, 370-74, 383-87.) Claimant reported that she experienced panic attacks and felt panic in a motor vehicle and in traffic. (Tr. at 321, 370, 383.) She stated that she liked her job, but did not like her boss. (Id.) When she had to fill the local automated teller machines with co-workers, she would panic. (Id.) Mental status exam was normal with the exception that she appeared fidgety and had a worried affect, with tears. (Tr. at 323-24, 372-73, 385-86.) Dr. Schaffner diagnosed panic disorder with agoraphobia, consider generalized anxiety disorder, depressive disorder NOS, and assessed a GAF of 50. (Tr. at 324, 373, 386.) She continued Claimant on Xanax, decreased her Cymbalta, and prescribed Celexa. (Tr. at 324-25, 373-74, 386-87.)

By letter dated October 12, 2011, Dr. Schaffner advised Dr. Lowers that Claimant could benefit from psychotherapy, which hopefully would help her "to gain mastery over the panic attacks." (Tr. at 320.) On November 15, 2011, Dr. Levitt conducted counseling that focused on handling anxiety attacks. (Tr. at 367.) She assessed that Claimant's level of functioning was much worse. (Id.) On November 30, 2011, Claimant reported to Dr. Schaffner that back on the Cymbalta, she did better at work and felt less anxious. (Tr. at 317, 380.) Claimant was able to fill the ATM machines twice at work, but felt overwhelmed that she was expected to fill them on a weekly basis. (Id.) Despite having taken Xanax, Dr. Schaffner noted that Claimant appeared anxious and diaphoretic. (Id.) Dr. Schaffner assessed a GAF of 53 and continued her medications, and added

Valium. (Tr. at 318, 381.)

In a letter to Claimant's employer, dated January 9, 2012, Claimant requested accommodations due to her disabling mental impairments. (Tr. at 268.) She stated that she could "do every aspect of my job right now except travel to fill, fix, or check ATM's, etc." (Id.) Also on January 9, 2012, during another counseling session, Dr. Levitt again noted that Claimant's level of functioning was much worse, as were her stressors. (Tr. at 368.) Dr. Levitt noted that she saw Claimant five times from August 10, 2011, through January 9, 2012. (Tr. at 369.)

On January 18, 2012, Claimant reported that she had to fill the ATM machines on a weekly basis and found herself in a very negative work environment. (Tr. at 314, 378.) She also reported that she was on probation at work until the end of March due to a situation when her boyfriend visited for lunch and management accused Claimant of having taken too long of a break. (Id.) Claimant reported that part of her wished that she would have been terminated but the other part of her did not because she was unable to afford her car payment, but would have allowed her time with her family. (Id.) Dr. Schaffner assessed a GAF of 55, continued her medications, and encouraged Claimant to work with her employer. (Tr. at 315, 379.) In a letter dated January 18, 2012, Dr. Schaffner sent a letter to Claimant's employer, in which she stated that Claimant experienced an increased frequency of panic attacks with having to fill the ATM machines. (Tr. at 269.) Dr. Schaffner further stated that it was her "belief that she would be able to function better in her current position if she did not have to leave the building to fill these automated teller machines." (Id.)

On April 10, 2012, Dr. Frank Bettoli, Ph.D., a State agency licensed psychologist, conducted a consultative evaluation and mental status examination. (Tr. at 307-11.) Claimant drove herself and her boyfriend to the evaluation, and complained of panic attacks and agoraphobia. (Tr. at 307-08.) She reported that she feared being in a vehicle, being by herself, and being in public places or stores. (Tr. at 308.) Her panic attacks began in August 2002, when she travelled with a singing group from

college. (Tr. at 307.) Mental status exam revealed an anxious mood and constricted affect, but good insight and judgment, full orientation, and normal memory, concentration, persistence, pace, and social functioning. (Tr. at 310.) Dr. Bettoli acknowledged that Claimant was able to perform normal daily activities and household chores, but was limited in her ability to travel outside her home due to her anxiety and panic. (Id.) He diagnosed panic disorder with agoraphobia and opined that her prognosis was fair/guarded. (Tr. at 310-11.)

On May 3, 2012, Dr. Ann Logan, Ph.D., opined that Claimant's anxiety disorder neither was a severe impairment nor met or equaled a listing level impairment, but resulted in mild difficulties in maintaining social functioning; no difficulties in maintaining daily activities, concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 79-80, 85-86.) Dr. Carl G. Hursey, Ph.D., affirmed Dr. Logan's opinion on August 18, 2012. (Tr. at 93-94, 100-01.)

Claimant returned to Dr. Schaffner on May 8, 2012, accompanied by her grandmother. (Tr. at 328, 375.) Since her last visit in January 2012, Claimant reported that she was terminated from her job at the credit union. (Id.) She since then became isolative and had to sell her vehicle. (Id.) Dr. Schaffner diagnosed panic disorder with agoraphobia, generalized anxiety disorder, depressive disorder NOS, and assessed a GAF of 57. (Tr. at 329, 376.) She noted that "having the structure of the job was helpful and that at least it got her out of the house." (Tr. at 330, 377.) Dr. Schaffner encouraged and supported Claimant's grandmother's efforts to force her to do things rather than to avoid them. (Id.)

On July 11, 2012, Claimant reported to Dr. Schaffner that she had been in a panic attack since before arriving at her office, that began when driving. (Tr. at 326.) Dr. Schaffner discontinued Ativan and prescribed Xanax and increased the dosage of Zoloft. (Tr. at 327.)

On October 1, 2013, Claimant presented to Cherrie L. Cowan, FNP-BC, at Wirt County Health Services Association, Inc., to establish herself as a new patient for complaints of acne, IBS,

anxiety, and depression. (Tr. at 346-53.) Ms. Cowan assessed a normal examination; allergic rhinitis; IBS; acne; major depression, recurrent; severe, recurrent major depression; and generalized anxiety disorder. (Tr. at 351.) She advised Claimant to eat healthy and to become active. (Id.)

On January 6, 2014, Dr. Priscilla Levitt, Ph.D., completed a form Mental Impairment Questionnaire – Adult, on which she stated that she saw Claimant four times between August 10, 2011, and January 9, 2012. (Tr. at 407.) Dr. Levitt noted that Claimant cancelled several appointments due to her anxiety and that she failed to seek further treatment after she was fired. (Id.) The only clinical finding Dr. Levitt noted was that Claimant was oriented in all spheres, but identified many symptoms, including: anhedonia, decreased energy, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, pathological dependence or passivity, persistent disturbances of mood or affect, apprehensive expectation, emotional withdrawal or isolation, persistent fear, and recurrent severe panic attacks. (Tr. at 409.) She assessed moderate limitations in maintaining concentration, persistence, or pace; maintaining attention and concentration for extended periods; performing activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. (Tr. at 410, 412-14.) Dr. Levitt also assessed marked limitations in Claimant's ability to interact with the general public; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and complete normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Id.)

11

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to comply with 20 C.F.R. §§ 404.1527 and 416.927, when he assigned no weight to Dr. Levitt's opinion. (Document No. 11 at 9-13.) She asserts that the ALJ's stated reasons for giving no weight to Dr. Levitt's opinion failed to constitute "good reasons" as required by the Regulations and Rulings and were not supported by the substantial evidence of record. (<u>Id.</u> at 11.) She asserts that the medical record demonstrated that despite her compliance with medication, her panic attacks and anxiety worsened. (<u>Id.</u>) She notes that the ALJ erred in attributing Dr. Schaffner's May 2012, evaluation to Dr. Levitt and characterizing Dr. Schaffner's assessment as having revealed only moderate limitations and findings. (<u>Id.</u> at 12.) Claimant contends that Dr. Schaffner specifically found that she was more isolative and avoidant and experienced daily panic attacks. (<u>Id.</u>) Although Dr. Levitt's opinion was rendered two years after her last examination, Claimant asserts that Dr. Levitt was the last treating source that provided regular mental health treatment to her. (<u>Id.</u>) Accordingly, Claimant contends that she "would have been in the best position for providing a medical source statement regarding the severity of [her] mental impairments and any resulting limitations as of the alleged onset date." (<u>Id.</u>)

In response, the Commissioner asserts that Dr. Levitt's findings were contradicted by the contemporaneous treatment notes of Dr. Schaffner's, who opined that the structure of a job would have been helpful to Claimant. (Document No. 12 at 8.) The Commissioner further emphasizes the fact that Dr. Levitt last examined Claimant approximately two years prior to her opinion, and therefore, was unaware of Claimant's medication regimen. (<u>Id.</u>)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because in assessing her RFC, the ALJ failed to consider the limitations that resulted from her IBS. (Document No. 11 at 13-14.) Specifically, she asserts that the ALJ failed to consider that her

IBS was aggravated by high stress and anxiety, required frequent bathroom trips after eating when away from home, and imposed limitations on her ability to maintain attention and concentration. (Id. at 14.) In response, the Commissioner asserts that nothing in the record indicated that Claimant's IBS limited her employment ability, that no physician identified any resulting work-related limitations, and that Claimant failed to allege IBS as a disabling impairment. (Document No. 12 at 8-9.) She further notes that Claimant received only intermittent treatment for her IBS and that she denied any physical impairments when evaluated by Dr. Bettoli. (Id. at 8.)

Finally, Claimant contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to obtain an updated medical opinion after evidence was received subsequent to the opinions of Drs. Logan and Hursey. (Document No. 11 at 14-16.) Claimant contends that pursuant to SSR 96-6p, the ALJ was required to obtain an opinion from a medical expert, after the ALJ determined that the additional evidence warranted a step two finding that was contrary to the opinions of the State agency consultants. (Id. at 15-16.) In response, the Commissioner asserts that it was the ALJ's duty to assess Claimant's RFC, which was supported by the substantial evidence of record. (Document No. 12 at 9.) In view of Claimant's statements that her primary difficulty with work was her requirement to travel to fill ATM machines, the Commissioner asserts that the ALJ accommodated such requirement by limiting her to a job that did not require travel or more than occasional interaction with co-workers and the public. (Id.)

Analysis.

1. Opinion Evidence.

Claimant alleges that the ALJ erred in giving no weight to Dr. Levitt's opinion. (Document No. 11 at 9-13.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2013). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and

extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2014). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i).

14

In his opinion, the ALJ clearly mistakenly referred to Dr. Levitt's opinion as Dr. Schaffner's. The ALJ identified the opinion by the appropriate Exhibit and even referenced Dr. Levitt's treatment notes. Thus, the undersigned finds no error in interchanging the medical source names. The ALJ summarized Dr. Levitt's opinion and accorded her opinion no weight because her opinion was rendered two years after her last visit with Claimant, her marked limitations were unsupported by her moderate examination findings, and she encouraged Claimant to participate in activities rather than avoid them. (Tr. at 27.) Despite Dr. Levitt's assessed marked limitations, Dr. Schaffner's treatment notes indicated that Claimant's symptoms only were moderate in nature and that Dr. Schaffner found that the structure of a job was helpful to Claimant. Although Dr. Levitt noted that Claimant's symptoms had worsened, the medical records from Dr. Schaffner since Dr. Levitt's last exam in January 2012, established only moderate symptoms and limitations and that the structure of a job was helpful to Claimant. Dr. Bettoli also failed to find any significant limitations. The evidence between Dr. Levitt's last exam and her opinion, demonstrated that Claimant's symptoms were moderate in nature and that she was able to work. Accordingly, the undersigned finds that the ALJ's decision to give no weight to Dr. Levitt's opinion, is supported by substantial evidence.

2. RFC.

Claimant also alleges that the ALJ erred in failing to consider limitations resulting from her IBS in assessing her RFC. (Document No. 11 at 13-14.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment,

duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2013). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In his decision, the ALJ found that Claimant had the RFC to perform work at all levels of exertion with occasional interaction with the public and co-workers and in a position that did not require travel. (Tr. at 24.) He noted that Claimant was diagnosed with IBS in October 2013. (Tr. at 26, 265, 351.), and that her physical exams were normal. (Tr. at 23.) The medical record reveals that Claimant complained of IBS to Dr. Lowers on June 20, 2011, which she described as cramping aggravated by high stress and anxiety. (Tr. at 290.) The medical record otherwise was devoid of complaints regarding IBS, and, as the Commissioner notes, Claimant denied any physical impairments and reported that she performed normal daily activities and chores, when examined by Dr. Bettoli in April 2012. (Tr. at 310.) Furthermore, despite having been diagnosed with IBS in 2011, the ALJ noted in his decision that Claimant continued to work through January 2012. (Tr. at 20.) The record does not contain any limitations resulting from Claimant's IBS, as assessed by a medical source. Finally, as the ALJ found, Claimant testified that it was her mental issues that kept her from working. (Tr. at 23.) Accordingly, the undersigned finds that the ALJ properly acknowledged Claimant's IBS impairment and that his resulting RFC

16

assessment, which did not contain any limitations from her IBS, is supported by substantial evidence.

3. <u>Updated Medical Opinion</u>.

Finally, Claimant alleges that the ALJ erred in failing to obtain an updated medical opinion subsequent to the opinions of Drs. Logan and Hursey. (Document No. 11 at 13-16.) In <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate."   <u>Id.</u>   The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence.   <u>Id.</u>

It is nevertheless Claimant's responsibility to prove to the Commissioner that he is disabled.   20 C.F.R. §§ 404.1512(a), 416.912(a) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment.   <u>Id.</u> §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time

you say that you are disabled." §§ 404.1512 (c), 416.912(c).  In <u>Bowen v. Yuckert</u>, 482 U.S.

137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof
> in disability proceedings.  It is true . . . that the Secretary bears the burden of
> proof at step five . . . [b]ut the Secretary is required to bear this burden only if the
> sequential evaluation process proceeds to the fifth step.   The claimant first must
> bear the burden . . . of showing that . . . he has a medically severe impairment or
> combination of impairments . . . .   If the process ends at step two, the burden of
> proof never shifts to the Secretary.   . . .   It is not unreasonable to require the
> claimant, who is in a better position to provide information about his own medical
> condition, to do so.

<u>Bowen v. Yuckert</u>, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ

has a duty to develop the record fully and fairly, he is not required to act as the claimant's

counsel. <u>Clark v. Shalala</u>, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of

establishing a <u>prima facie</u> entitlement to benefits.   <u>See Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th

Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a

disability unless he furnishes such medical and other evidence of the existence thereof as the

Commissioner of Social Security may require.")   Similarly, Claimant "bears the risk of

non-persuasion." <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056 (4th Cir. 1976).

This District Court held in <u>Hampton v. Colvin</u>, 2015 WL 5304294, at *22 (S.D. W.Va.

Aug. 17, 2015)(M.J. Eifert), that the Regulations "impose no limit on how much time may pass

between a report and the ALJ's decision in reliance on it. Only where 'additional medical

evidence is received that in the opinion of the [ALJ]…may change the State agency

medical…consultant's finding'…is an update to the report required." <u>Id.</u> (*quoting* <u>Chandler v.</u>

<u>Commissioner of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011)).

In this case, the ALJ gave no weight to the opinions of Drs. Logan and Hursey, regarding

18

Claimant's mental RFC, because they found Claimant had no severe impairment. (Tr. at 28.) The ALJ concluded that the evidence established severe impairments of generalized anxiety and panic attacks, which resulted in difficulty traveling alone and interacting with others. (Id.) Claimant alleges that the evidence submitted after Dr. Logan's and Dr. Hursey's opinion, the evidence upon which the ALJ relied in finding severe mental impairments, constituted key evidence that reasonably would have changed the opinions of the State agency psychological consultants. Claimant contends that the ALJ was required to obtain an updated medical opinion to determine whether the State agency consultants' step three analysis would have been different. The ALJ however, determined that Claimant's mental impairments resulted in no more than moderate difficulties in mental functioning and failed to meet or equal a Listing level impairment. As the Commissioner notes, Dr. Schaffner, Claimant's treating psychologist, determined that the structure of a job was helpful to Claimant (Tr. at 330, 377.), and that she would function better in a position that did not require her to leave the building to fill the ATM machines. (Tr. at 269.) Thus, as the ALJ found, the additional evidence did not establish a listing level impairment, and therefore, the ALJ's decision without an updated medical opinion is supported by the substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**,

and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 5, 2016.

Omar J. Aboulhosn
United States Magistrate Judge