UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JESSICA RENEE CHANEY,

       Plaintiff,

v.                           Civil Action No. 15-12556

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are the objections filed on July 15, 2016, by plaintiff Jessica R. Chaney ("plaintiff") to the magistrate judge's Proposed Findings and Recommendation ("PF&R").

I.  <u>Background</u>

A. Procedural History

On August 20, 2015, plaintiff instituted this civil action pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks judicial review of the Commissioner's administrative decision denying plaintiff's application for disability insurance benefits and supplemental security income.

This action was referred to United States Magistrate Judge Omar J. Aboulhosn for consideration, pursuant to 28 U.S.C.

1

§ 636(b)(1)(B) and standing order in this district.  The
magistrate judge filed his PF&R on July 5, 2016.  In that
document, the magistrate judge recommends that plaintiff's
motion for judgment on the pleadings be denied, that the motion
for judgment on the pleadings filed by the Commissioner be
granted, that the Commissioner's final decision be affirmed, and
that this action be dismissed from the docket.[1]  See PF&R, 19-20.
On July 15, 2016, as noted, plaintiff timely filed her
objections to the PF&R.  The Commissioner has not filed a
response to plaintiff's objections.

        Plaintiff objects to the magistrate judge's
determination that the Administrative Law Judge's ("ALJ")
explanation that the lack of weight he gave to the medical
opinion of Dr. Priscilla Leavitt, Ph.D. was supported by
substantial evidence and to the magistrate judge's determination
that consideration of certain updated medical opinions would not
have changed the ALJ's decision and hence was not necessary.
See Plaintiff's Objections to PF&R ("Obj."), 2-4 and 4-6.

---

[1] While Carolyn W. Colvin was the Acting Commissioner of Social
Security as of the date of Judge Aboulhosn's PF&R, Nancy
Berryhill became the Acting Commissioner on January 23, 2017.

B. The Record Evidence

Plaintiff is a thirty-three-year-old woman who resides in Wood County, West Virginia with her grandparents.  Tr. at 39-40.

The medical record indicates that plaintiff received outpatient mental health treatment from a number of sources.

Plaintiff was treated by Dr. Amelia McPeak, D.O., of Westbrook Health Services from June 2010 until March 2011.  Tr. at 278-89.  On June 7, 2010, Dr. McPeak diagnosed plaintiff with generalized anxiety disorder, noting that plaintiff had some symptoms of depression and worsening anxiety.  Id. at 278-79.  On August 9, 2010, Dr. McPeak noted that plaintiff still struggled with significant anxiety, particularly when traveling in a car.  Id. at 280-81.  On September 20, 2010, Dr. McPeak reported that plaintiff was "paralyzed, stuck in feelings of anxiety and fear."  Id. at 282-83.  On October 18, 2010, Dr. McPeak noted that while plaintiff regularly only took 60 milligrams of Cymbalta, instead of the 90 milligram daily dose she recommended, "her anxiety is under the best control that it has ever been."  Id. at 284-85.  On February 28, 2011, plaintiff reported continued anxiety and that she felt "very tense, very nervous, [and] has trouble driving because she experiences anxiety while driving."  Id. at 286-87.  Due to plaintiff's

3

continued anxiety, Dr. McPeak prescribed BuSpar.  Id.  On March 31, 2011, plaintiff visited Dr. McPeak in a pleasant mood, without any current feelings of anxiety or depression.  Id. at 288.  Because she was stable, Dr. McPeak continued her current medication.  Id. at 289.

Plaintiff was treated by Dr. Ryan Lowers, M.D. on June 20, 2011.  Id. at 290-93.  She presented with anxiety.  Id.  He noted that she had agoraphobia, anxiety driving cars, anxiety with crowds, and generally avoids traffic.  Id.  For the past several months she had not traveled from home apart from going to work.  Id.  Because her anxiety and panic disorder were not well controlled, Dr. Lowers changed plaintiff's medication to Klonopin and Pristiq.  Id. at 292.  On August 3, 2011, in a follow up visit to Dr. Lowers, plaintiff described her anxiety as "severe and unchanged."  Id. at 298.  Despite this, Dr. Lowers reported that her symptoms were relieved by medications, and did not change her current medications.  Id. at 298-300.

Plaintiff saw Dr. Priscilla Leavitt, Ph.D., of the Counseling and Wellness Center five times between August 10, 2011 and January 9, 2012.  Id. at 338, 342, 366, 343, 344.  On August 10, 2011, she noted that plaintiff had a twelve-year history of panic attacks moving towards agoraphobia and that plaintiff was unable to drive more than a few blocks or stay

4

alone.  Id. at 361-64.  Dr. Leavitt also noted that she

performed hypnosis and psychotherapy on plaintiff.  Id.  She

assessed a Global Assessment of Functioning ("GAF") score of 45.[2]

Id.  Plaintiff saw Dr. Leavitt again on August 17, 2011.  Id. at

365.  She noted that plaintiff's level of functioning was better

and assessed a GAF score of 47.  Id.  Plaintiff saw Dr. Leavitt

again on September 1, 2011.  Id. at 366.  She found plaintiff's

level of functioning to be unchanged and that her stressors were

worse and assessed a GAF score of 48.  Id.

On October 12, 2011, plaintiff presented to Dr. Liza

Schaffner, M.D., of the Counseling and Wellness Center upon

referral by Dr. Lowers.  Id. at 321.  Plaintiff reported that

she "becomes extremely panicky in a motor vehicle," and that she

became so stressed in the weeks before her brother's wedding

that she "worried [her]self sick" and was unable to attend it.

Id.  She stated that she liked her job but did not feel

supported by her boss.  Id.  Plaintiff stated that she

experienced the worst panic attacks at work when she had to fill

---

[2] A GAF score of 51 to 60 indicates moderate symptoms (e.g., flat
affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or social
functioning (e.g., few friends, conflicts with peers or co-
workers).  Diagnostic and Statistical Manual of Mental
Disorders, Text Revision ("DSM"), 34 (4th ed. 2000).  A GAF
score of 41 to 50 indicates serious symptoms or serious
impairments in social, occupational, or school functioning.  Id.

the ATMs.  According to Dr. Schaffner, because she had to fill the ATM again soon, "it [was causing her] an extreme amount of anxiety."  Id.  Additionally, plaintiff started having panic attacks while at home.  Id.  Dr. Schaffner diagnosed her with panic disorder with agorphobia, consider generalized anxiety disorder, and depressive disorder NOS.  Id. at 324.  She assessed a GAF score of 50.  Id. at 324, 373, 386.  According to a letter sent to Dr. Lowers from Dr. Schaffner that same day, plaintiff's "panic attacks have increased in frequency and intensity over the past several months and she has become much more avoidant in recent weeks.  Her mood is lower as well."  Id. at 320.  Dr. Schaffner believed that psychotherapy would help plaintiff "gain mastery over her panic attacks."  Id.

On November 15, 2011, plaintiff saw Dr. Leavitt for counseling, with a continuing focus on anxiety attacks.  Id. at 343.  According to Dr. Leavitt, plaintiff's level of functioning was much worse at this time.  Id.  On November 30, 2011, plaintiff saw Dr. Schaffner after a change of medication.  Id. at 317.  Since the change, plaintiff was doing better at work and feeling less anxious.  Id.  Although she filled the ATMs twice, she was overwhelmed with learning she would have to fill them on a weekly basis.  Id. at 318.  Dr. Schaffner assessed a GAF score of 53 and continued her medications but added valium.

Id. at 318.  On January 1, 2012, plaintiff sent a letter to her employer requesting accommodations from "travel[ing] to fill, fix or check ATM's."  Id. at 268.  On January 9, 2012, plaintiff saw Dr. Leavitt, who noted that her stressors and level of functioning were much worse.  Id. at 368-69.

On January 18, 2012, plaintiff reported to Dr. Schaffner that she was in a negative work environment and had to fill the ATMs on a weekly basis.  Id. at 314.  Plaintiff also learned she was on probation because of a situation where she took too long of a break when her boyfriend visited her at lunchtime.  Id.  She stated that she had not visited her grandfather since Christmas because she always has a severe panic attack when leaving his home.  Id.  Plaintiff had a severe panic attack at work and "[h]er chest was hurting, she became breathless" and her boyfriend wanted her to go to the emergency room but she did not.  Id.  Dr. Schaffner assessed a GAF score of 55, continued her medications and encouraged plaintiff to try to work with her employer.  Id.

On April 10, 2012, plaintiff presented for a consultative evaluation and mental status examination before Dr. Frank Bettoli, Ph.D., a state agency licensed psychologist.  Id. at 307-313.  Plaintiff drove herself to the evaluation but had her boyfriend ride with her and had her grandparents come to the

7

interview in order to manage her anxiety.  <u>Id.</u> at 307-08.

Plaintiff stated that she "lives in fear" of being by herself,

being in cars, and being in public places or stores.  <u>Id.</u> at

308.  When she gets anxiety, her heart rate increases, she

"feel[s] like she is going to die, has difficulty concentrating,

feels as though she needs to flee, has an upset stomach, sweats

and sometimes hyperventilates."  <u>Id.</u>  Dr. Bettoli acknowledged

that while plaintiff is capable of doing household chores, she

"is primarily limited in her ability to travel outside of her

home due to her anxiety and panic."  <u>Id.</u> at 310.  Dr. Bettoli

diagnosed plaintiff with panic disorder with agoraphobia and

assessed her prognosis as fair/guarded.  <u>Id.</u> at 310-11.

On May 3, 2012, Dr. Ann Logan, Ph.D., a state agency

consultant, gave an opinion that plaintiff's anxiety disorder

was not severe and did not meet or equal a listing level

impairment.  <u>Id.</u> at 79-80.  Dr. Logan did state that plaintiff's

anxiety resulted in mild difficulties in maintaining social

functioning, and no difficulties in maintaining daily

activities, concentration, persistence or pace, and no episodes

of decompensation.  <u>Id.</u>  On August 18, 2012, Dr. Carl G. Hursey,

Ph.D. affirmed Dr. Logan's opinion.  <u>Id.</u> at 93-94.

On May 8, 2012, plaintiff presented to Dr. Schaffner

for the first time since January 2012.  <u>Id.</u> at 328.  Since being

terminated from her job at the credit union, Dr. Schaffner found that plaintiff had become more isolative, much more avoidant and could not stand to be by herself because of her fear of having a panic attack when no one is there to calm her down.  Id. at 329. Plaintiff felt that the "structure of the job was helpful and that at least it got her out of the house."  Id. at 330.  Dr. Schaffner encouraged her grandmother's efforts to do things rather than to avoid them.  Id.  Dr. Schaffner diagnosed panic disorder with agoraphobia, generalized anxiety disorder, depressive disorder NOS, and assessed a GAF score of 57.  Id. at 329.

On July 11, 2012, plaintiff saw Dr. Schaffner, reporting that she had been in a panic attack since before she arrived for the appointment.  Id. at 326.  Dr. Schaffner discontinued Ativan, prescribed Xanax, and increased the dosage of Zoloft.  Id. at 327.

On October 1, 2013, plaintiff saw Cherrie L. Cowan, FNP-BC at Wirt County Health Services, Association, Inc., to become a new patient there.  Id. at 346-53.  Ms. Cowan assessed major depression, recurrent; severe, recurrent major depression; and generalized anxiety disorder.  Id. at 351.

On January 6, 2014, Dr. Leavitt completed a form Mental Impairment Questionnaire on which she stated she saw

9

plaintiff four times between August 10, 2011 and January 9, 2012.[3]  Id. at 407.  According to Dr. Leavitt, plaintiff canceled several appointments because of her anxiety and did not seek further treatment after she was fired from her job.  Id. at 407. Dr. Leavitt found that plaintiff was oriented in all spheres, but had many symptoms including: anhedonia, decreased energy, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, pathological dependence or passivity, persistent disturbances of mood or affect, apprehensive expectation, emotional withdrawal or isolation, persistent fear, and recurrent severe panic attacks.  Id. at 409.  She assessed moderate limitations in maintaining concentration, persistence, or pace; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; sustaining an ordinary routine without special supervision; making simple work-related decisions; asking simple questions or requesting assistance; getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and setting realistic goals

---

[3] The record shows that Dr. Leavitt actually saw plaintiff five times: on August 10, 2011, August 17, 2011, September 1, 2011, November 15, 2011, and January 9, 2012.  See Tr. at 316, 338-341, 342, 343, 344-45, 361-64, 365, 366, 367, 368, 369.

or making plans independently of others.  Id. at 410, 412-14.
Dr. Leavitt assessed marked limitations in plaintiff's ability
to interact with the general public; respond appropriately to
changes in the work setting; travel to unfamiliar places or use
public transportation; and complete normal workday and workweek
without interruption from psychologically based symptoms and to
perform at a consistent pace without an unreasonable number and
length of rest periods.  Id.

### C. The ALJ's Decision

On January 27, 2014, the ALJ held a hearing with
plaintiff and her counsel present.  Id. at 37.  On March 21,
2014, the ALJ issued a decision denying plaintiff's request for
benefits.  Id. at 20-30.  At steps one and two, the ALJ
determined that plaintiff had not engaged in substantial gainful
activity since January 25, 2012 as the result of the severe
impairments of panic disorder and generalized anxiety disorder,
and the non-severe impairment of irritable bowel syndrome.  Id.
at 23.  At step three, the ALJ concluded that plaintiff did not
suffer from an impairment listed in 20 C.F.R. § 404, Subpt. P.,
App. 1.  Id.  However, he noted that plaintiff had moderate
difficulties in social functioning due to being diagnosed with
generalized anxiety disorder and panic disorder and at times has
difficulty leaving her home.  Id. at 23.

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she can only have occasional interaction with co-workers and the public in a position that does not require travel." Id. at 24. The ALJ concluded that plaintiff retained the aforementioned RFC at least in part because he found that plaintiff's "statements about her impairments imply an attempt to present herself as more limited than she is in order to secure benefits." Id. at 25.

In reaching his credibility determination, the ALJ considered the record of evidence. For example, the ALJ concluded that plaintiff had sporadic and routine treatment, which is not the "type of treatment one would expect for a totally disabled individual." Id. In addition, the ALJ concluded that "treatment has been generally successful in controlling [plaintiff's] symptoms." Id. at 26. The ALJ also found plaintiff's "appearance and demeanor to be unpersuasive while testifying at the hearing," and her activities were not as limited as one would expect given her allegations. Id. at 27.

The ALJ also considered and discounted the opinion of Dr. Leavitt. Although the ALJ incorrectly attributed Dr. Leavitt's opinions to Dr. Schaffner, the ALJ referred to the

12

exhibit containing the opinions of Dr. Leavitt and cited from the Mental Impairment Questionnaire that Dr. Leavitt completed. See Tr. at 27. The ALJ afforded no weight to the opinions of Dr. Leavitt because they were given two years after plaintiff's last visit, her marked limitations were not supported by the "no more than moderate findings assessed during her final evaluation" of plaintiff, and because she encouraged plaintiff to participate in activities, not avoid them. Id. However, due to the ALJ's error, the last visit he refers to and the corresponding treatment notes from it, was with Dr. Schaffner, not Dr. Leavitt. Id. at 328-330.

The ALJ also considered and afforded no weight to the findings of the state agency consultants Dr. Logan and Dr. Hursey that plaintiff had no severe mental limitations. Id. at 28. The ALJ found that plaintiff's repeated claims of panic attacks support a finding that plaintiff's generalized anxiety and panic attacks are severe. Id.

Finally, based on his assessment of plaintiff's RFC and the testimony of Patricia Posey, the vocational expert, the ALJ found, at step four and step five, that plaintiff was not capable of performing any past relevant work, but was capable of performing the requirements of representative occupations, such as a night cleaner, non-postal mail clerk, and folder. Id. at

29. The ALJ determined that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Id. As a result, he concluded that plaintiff was not disabled. Id.

## II. Standard of Review

The court must determine whether the ALJ's decision is based upon an appropriate application of the law and is supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ.]" Craig v. Charter, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks and citations omitted). As a result, if the court finds that substantial evidence supports the ALJ's finding, the decision must be affirmed even if the court disagrees with the outcome. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### III. Discussion

Plaintiff contends that the magistrate judge erred in recommending that the court deny plaintiff's motion for judgment on the pleadings by (1) "summarizing and then affirming the ALJ's deficient explanation for the weight he gave to the medical opinion of . . . Dr. Priscilla Leavitt, Ph.D., without considering whether the ALJ applied the appropriate preferential legal standard"; and (2) "[f]inding an updated medical opinion was not necessary since the ALJ determined on his own that [plaintiff's] mental impairments did not meet or equal a listing."  Obj. at 2-4, 4-6.

The Social Security regulations establish a "sequential evaluation" for the adjudication of disability claims.  See 20 C.F.R. §§ 404.1520(a), 416.920.  The first question is whether the claimant is currently engaged in gainful employment.  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the second question is whether the claimant suffers from a severe impairment.  §§ §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If so, the third question is whether the claimant's impairment meets or equals any of the specific impairments listed in Appendix 1 to Subpart P of the regulations.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If it does, the claimant is considered disabled, and is awarded benefits.  Id.

If not, the inquiry continues on to whether the claimant's impairments prevent the performance of past relevant work.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant satisfies this inquiry, the claimant establishes a prima facie case of disability, shifting the burden to the Commissioner for the fifth and final inquiry.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983).  The final inquiry is whether the claimant is able to perform other forms of substantial gainful activity considering the claimant's impairments, age, education and prior work experience.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

A special process is involved when the claimant alleges a mental impairment.  §§ 404.1520a(a), 416.920a(a).  The Social Security Administration ("SSA") must first evaluate the claimant's symptoms, signs and laboratory findings to determine whether claimant has a medically determinable mental impairment and document its findings.  Id.  If a medically determinable mental impairment is established, the ALJ must then "rate the degree of functional limitation resulting from the impairment" by examining the extent to which the impairment interferes with the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis.  §§ 404.1520a(b)(2), (c)(2) and 416.920a(b)(2), (c)(2).  In doing

so, the ALJ considers whether the claimant's "activities of daily living[,] social functioning[,] and concentration, persistence or pace" are mildly, moderately, markedly, or extremely limited, or not limited at all.  §§ 404.1520a(c)(3), (4) and 416.920a(c)(3), (4).  "A rating of 'none' or 'mild' in the first three areas"—that is, activities of daily living; social functioning; and concentration, persistence, or pace— "and a rating of 'none' in the [category of episodes of decomposition] will generally lead to a conclusion that the mental impairment is not 'severe,' unless the evidence indicates otherwise."  White v. Astrue, 637 F. Supp. 2d 363, 368 (S.D.W.Va. 2009) (quoting 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1)).  The ALJ then must determine if the mental impairment is severe and if so, whether it qualifies as a listed impairment.  § 404.1520a(d).  If the impairment is severe but does not meet the requirements of a listing, the ALJ must assess the claimant's residual functional capacity ("RFC") in light of how all claimant's impairments constrain his work abilities.  § 404.1520a(d)(3).  The ALJ must document each step of this process.  § 404.1520a(e)(4).

A. ALJ's Assignment of No Weight to Dr. Leavitt's Opinion

According to plaintiff, the ALJ erred when he assigned the opinion of Dr. Leavitt "no weight" by failing to evaluate

her opinion as a treating psychologist, as required by 20 C.F.R. §§ 404.1527, 416.927. Obj. at 2. Plaintiff asserts that the ALJ's stated reasons for giving no weight to Dr. Leavitt's opinion did not constitute "good reasons" and were not supported by substantial evidence. Id. at 2-3.

The magistrate judge concluded that the decision to give no weight to the opinion of Dr. Leavitt was supported by substantial evidence because the "evidence between Dr. Leavitt's last exam and her opinion, demonstrated that [plaintiff's] symptoms were moderate in nature and that she was able to work." PF&R at 15. Plaintiff objects to this recommendation, arguing that the magistrate judge failed to consider whether the ALJ followed the requirements that a treating physician's opinion be given deference even if it is not given controlling weight, and that the reasons for giving no weight to the opinion were not good reasons. Obj. at 2-4.

An ALJ must generally give more weight to the medical opinions of a claimant's treating physician when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011). Indeed, such opinions concerning the "nature and severity" of a claimant's impairments are to be given "controlling weight" if they are "well-supported by the

medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the claimant's] case record[.]"  § 416.927(c)(2).

Even if a treating physician's opinion is ultimately adjudged not to be entitled to controlling weight, our court of appeals has explained, and the magistrate judge observed, that "the value of the opinion must be weighed and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. Burch v. Apfel, 9 F. App'x 255, 259–60 (4th Cir. 2001) (citing 20 C.F.R. § 404.1527).  In any event, the ALJ must provide "good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2).

As discussed, Dr. Leavitt completed a form Mental Impairment Questionnaire on January 6, 2014, in which she stated she saw plaintiff four times between August 10, 2011 and January 9, 2012.  Id. at 407.  In the form, Dr. Leavitt assessed a number of moderate and marked limitations.  Id.

19

In his decision, the ALJ determined that the opinions of Dr. Schaffner were entitled to "no weight."  Tr. at 27-28. According to the ALJ, Dr. Schaffner

> found the claimant's panic disorder with agoraphobia caused marked limitations in her ability to complete a workday or workweek without interruption from psychiatric based symptoms; in her ability to interact appropriately with the general public; in her ability to interact appropriately to changes in a routine work setting; and in her ability to travel in unfamiliar places or use public transportation.  No weight is afforded to the findings of Dr. Schaffner.  Her opinions were provided two years after her last visit with the claimant. Moreover, her marked limitations are not supported by the no more than moderate findings assessed during her final evaluation of the claimant, wherein she diagnosed the claimant with panic disorder with agoraphobia, generalized anxiety disorder, and depressive disorder, and a GAF of 57.  Further, she encouraged claimant to participate in activities rather than avoid them.
>
> No weight is afforded to the marked limitations provided by Dr. Schaffner.  Her assessment was made nearly two years after her last evaluation of the claimant. Further, that evaluation assessed moderate limitations. A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers) (Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000)).  While GAF scores are of limited evidentiary value as they reveal only snapshots of impaired and improved behavior, in this case GAF scores consistently resulted in no more than moderate findings, findings consistent with the residual functional capacity herein.

Tr. at 27-28.  As previously noted, it appears that the ALJ incorrectly referred to the opinions as those of Dr. Schaffner instead of Dr. Leavitt because it was Dr. Leavitt who filled out the questionnaire to which the ALJ refers.  However, the

statements regarding plaintiff's moderate limitations,
encouragements to plaintiff to participate in activities, and
GAF score of 57 were from May 8, 2012 treatment records
completed by Dr. Schaffner.  Thus, it appears that in making the
determination to afford no weight to the above questionnaire,
the ALJ considered the treatment records of Drs. Leavitt and
Schaffner.

The ALJ determined that Dr. Leavitt's opinions were
not consistent with the record because her last evaluation
"assessed moderation limitations, and "she encouraged
[plaintiff] to participate" in activities, not avoid them," and
therefore were not entitled to controlling weight.  Id. at 24.
Because the ALJ attributed all of the above opinions to Dr.
Schaffner, the ALJ found the Mental Health Questionnaire, which
was actually completed by Dr. Leavitt, to be inconsistent with
statements taken from plaintiff's May 8, 2012 evaluation
conducted by Dr. Schaffner.  See id. at 328-330.  The ALJ's
error in incorrectly attributing some of Dr. Leavitt's treatment
records and opinions to Dr. Schaffner, was harmless in that he
intended to find that the opinions of Dr. Leavitt were not
entitled to controlling weight because they were not consistent
with all of the evidence on the record, specifically with Dr.
Schaffner's treatment records.  Id. at 328.

After determining not to afford Dr. Leavitt's opinion controlling weight, the ALJ was still required to weigh the factors listed in 20 C.F.R. § 404.1527(c)(2).  The ultimate test is not whether the ALJ mechanically recited each factor, but whether it is clear from the decision that all of the pertinent factors were considered.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (deducing, "[a]fter carefully considering the entire record and the ALJ's opinion," that "the ALJ applied the substance of the treating physician's rule."); Botta v. Barnhart, 475 F. Supp. 2d 174, 188 (E.D.N.Y. 2007) ("Although the ALJ should 'comprehensively' set forth the reasons for the weight assigned to a treating physician's opinion, the failure to do so does not require remand if it can be ascertained from the entire record and the ALJ's opinion that the ALJ 'applied the substance' of the treating physician rule." (internal citations omitted)); see also Burch, 9 F. App'x at 259-60 (parsing the ALJ's order and concluding that the decision therein 'indicate[d] consideration of all the pertinent factors'"); Tucker v. Astrue, 897 F. Supp. 2d 448, 468 (S.D.W.Va. 2012) ("Simply stated, the adequacy of the written discussion is measured by its clarity to subsequent reviewers.").

The ALJ's decision indicates that he considered all of the relevant factors.  The ALJ noted that plaintiff saw Dr. Leavitt, as she said, on four occasions between August 2011 and January 2012, although Dr. Leavitt's records indicate that she in fact saw plaintiff on five occasions during this time.  Tr. at 25; supra n. 2.  From this, it appears that the ALJ considered the length, frequency, and extent of plaintiff's treatment relationship with Dr. Leavitt, as well as her status as a psychologist.

The remaining factor, the consistency of the opinion with the record as a whole, was additionally addressed by the ALJ.  Indeed, the ALJ actually compared Dr. Leavitt's assessment with treatment records from Dr. Schaffner in May 2012, finding that Dr. Leavitt's marked limitations were not consistent with the no more than moderate findings assessed by Dr. Shaffner in May 2012, where she assessed a GAF score of 57.  Tr. at 27.  Further, the ALJ found Dr. Leavitt's opinions to be inconsistent with the directive, actually given by Dr. Schaffner, that plaintiff should "participate in activities rather than avoid them."  Id.

It is evident from the ALJ's decision that he properly considered the record as a whole and compared it to the opinion evidence he was discrediting, finding that it was inconsistent

23

with the treatment evidence in the record.  The ALJ discussed
Dr. McPeak's treatment of plaintiff, finding that despite
plaintiff's lack of compliance with her medication, "the doctor
noted no symptoms of depression or low mood, found [her]
behavior normal and cooperative, her attention and concentration
intact, and insight and judgment fair."  Id. at 25.  The ALJ
also noted that Dr. McPeak's progress notes indicate that
plaintiff's "anxiety is under the best control that it ever has
been."  Id.

     The ALJ also discussed Dr. Schaffner's treatment of
plaintiff, which was contemporaneous with Dr. Leavitt's
treatment of plaintiff.  Id. at 26.  Although the ALJ noted that
plaintiff experienced one severe panic attack at work during
this time and other little panic attacks, she assessed GAF
scores of 55 and 57.  Id.  While plaintiff was "more avoidant
and afraid to be alone," Dr. Schaffner found that "her mood was
assessed as good, her insight fairly good, and her judgment
intact."  Id.  And, as noted, the ALJ recognized that in
contradiction to Dr. Leavitt's opinions, Dr. Schaffner
encouraged plaintiff to participate in activities, not avoid
them.  Id. at 27.  The ALJ also found important that Dr.
Schaffner "found having the structure of a job was helpful [to
plaintiff]."  Id. at 26.

The ALJ discussed the most recent evidence of record, by Ms. Cowan, FNP-BC, whose notes "identified no feelings of restlessness, no sleep disturbance, and no decrease in concentration, and no feelings of helplessness or hopelessness." She found plaintiff's examination to be normal.  Id. at 25.

After discussing the individual treatment records of plaintiff's treating physicians, the ALJ summarized the treatment records, finding that,

> Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms.  Moreover, the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which also weighs in her favor, but again, the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

Id. at 26.  Indeed, plaintiff's physicians found on multiple occasions that plaintiff's symptoms were relieved by her medications.  Id. at 284-85, 288, 298-300, 317, 330.

Finally, the ALJ discussed plaintiff's activities of daily living, finding that they "are not as limited as one would expect given her allegations."  Id. at 27.  The ALJ found that "[s]he maintains personal care, participates in household chores, and maintains relationships with her grandparents and boyfriend."  Id.

In sum, the ALJ compared Dr. Leavitt's findings to the other record evidence, considering the treatment records of plaintiff's physicians, including those of Dr. Schaffner that were contemporaneous with those of Dr. Leavitt, and found that Dr. Leavitt's opinions, which were given two years after her treatment of plaintiff, did not support her findings of moderate and marked limitations.  The ALJ discussed that while plaintiff was experiencing panic attacks at times, her symptoms were generally controlled by medications and even when she was becoming more avoidant and was afraid to be alone, her doctor found her mood to be good, her insight fairly good and her judgment to be intact.  Id. at 26, 284-85, 288, 298-300, 317, 330.  It is clear from the ALJ's decision that all of the pertinent factors were considered.  See Oldham, 509 F.3d 1254, 1258 (10th Cir. 2007); see also 20 C.F.R. § 404.1527.

Upon review of the record, the court concludes that the ALJ here gave "good reasons ... for the weight [he] g[a]ve [plaintiff's] treating source's opinion," 20 C.F.R. § 404.1527(c)(2), and his analysis was thorough, detailed, and supported by evidence in the record.  Because substantial evidence supports the ALJ's determination, the court concludes that it should be upheld.

**B. The ALJ's Failure to Obtain an Updated Medical Opinion**

Plaintiff next alleges that the ALJ erred in failing to obtain an updated medical opinion from the state agency medical consultants after giving no weight to their opinions because evidence was added to the record after their opinions were issued that confirmed plaintiff's anxiety and panic disorder.  Obj. at 4.  According to plaintiff, since the consultants did not believe that plaintiff's impairments were severe at the time of evaluation, they did not evaluate her mental impairments under the appropriate listing criteria.  Id. at 5.  In addition, before the decision by the ALJ, Dr. Leavitt provided a statement that demonstrated that plaintiff's "mental impairments were of listing-level severity," which plaintiff contends is a sufficient reason to obtain an updated medical opinion.  Id. at 5.

The magistrate judge recommends that an updated medical opinion was not necessary because "the ALJ [] determined that [plaintiff's] mental impairments resulted in no more than moderate difficulties in mental functioning and failed to meet or equal a Listing level impairment."  PF&R at 19.  According to the magistrate judge, the additional evidence did not establish a listing level impairment and therefore was not required.  Id. at 18-19.  Plaintiff objects to these recommendations.

Generally, an updated opinion is required solely if the subsequently submitted evidence shows a "significant change occurred in the claimant's condition after issuance of the consultant's opinion that reasonably would affect its validity." Hampton v. Colvin, No. 1:14-CV-24505, 2015 WL 5304294, at *22 (S.D.W. Va. Aug. 17, 2015) report and recommendation adopted, No. CV 1:14-24505, 2015 WL 5304292 (S.D.W. Va. Sept. 9, 2015) (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); and Starcher v. Colvin, No. 1:12-01444, 2013 WL 5504494, at *7 (S.D. W. Va. Oct. 2, 2013)); see also White v. Colvin, No. CIV.A. 6:13-1935-BHH, 2014 WL 7952902, at *19 (D.S.C. Sept. 3, 2014) report and recommendation adopted, No. CIV.A. 6:13-1935-BHH, 2015 WL 892932 (D.S.C. Mar. 3, 2015); Jordan v. Astrue, Civ. A. No. BPG-09-1959, 2010 WL 5437205, at *4 (D. Md. Dec. 27, 2010) (noting that the ALJ did not err in relying on a physician's report where the ALJ considered the records submitted after the physician's report). Although there is always a lapse of time between the report of the consultant and the decision of the ALJ, "[o]nly where 'additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding . . . is an update to the report required. Starcher v. Colvin, No. 1:12-01444, 2013 WL 5504494 at *7 (S.D.W.Va. Oct. 2, 2013) (quoting Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d

Cir. 2011).  Thus, it is the job of the court to determine whether the evidence acquired after the opinion of the state agency medical consultants would reasonably change their findings, requiring an updated opinion.

On May 13, 2012, state agency consultant Dr. Ann Logan, Ph.D. determined that plaintiff did not have any severe impairments and therefore did not meet any listings.  Tr. at 80. On August 18, 2012, Dr. Karl Hursey, Ph.D. affirmed the findings of Dr. Logan.  Id. at 95.  After the opinions of Drs. Logan and Hursey, but before the decision of the ALJ, Dr. Leavitt provided the January 6, 2014 opinion regarding plaintiff.  Id. at 407-414.  The ALJ afforded no weight to the opinions of Drs. Logan and Hursey; instead, he determined that plaintiff had severe impairments of panic disorder and generalized anxiety disorder. Id. at 23, 28.  The ALJ's decision to give no weight to these two opinions was due to his findings that

> [plaintiff's] consistent claims of panic attacks,
> particularly when traveling to fill the ATM machine,
> supports [plaintiff's] allegations.  That said, I find
> [plaintiff's] generalized anxiety and panic attacks are
> severe, and find her difficulty traveling alone and
> interacting with others may cause an increase in her
> symptoms.  As such, considerations and limitations in these
> areas have been made and addressed in the residual
> functional capacity above . . . [and] the evidence in its
> entirety does not suggest any impairment or combination of
> impairments that would prohibit all work.

Id. at 28.

According to plaintiff, the ALJ's determination that
the record supported a finding of those two severe impairments,
while the record when the state agency consultants made their
opinions supported a finding of no severe impairments,
establishes that there must have been key evidence added to the
record after their opinions that would have changed their
opinions.  Plaintiff asserts that a finding of one or more
severe impairments would have required them to reach step three
and provide an analysis on whether plaintiff met or equaled a
listing level impairment.  Obj. at 5.  Plaintiff contends that
the opinion by treating source Dr. Leavitt, added to the record
after the opinions of the state agency consultants,
"demonstrated that [plaintiff's] mental impairments were of
listing-level severity."  Id.  According to plaintiff, this
constituted key evidence that would have changed the opinions of
the state agency consultants, requiring an updated opinion.  Id.
at 5-6.

As noted, the ALJ afforded no weight to the state
agency opinions of the psychologists Drs. Logan and Hursey, that
plaintiff did not have any severe impairments.  Tr. at 23, 28.
The ALJ then found, when considering all the evidence in the
record, that plaintiff's impairments did not meet or equal a
listing.  Although the ALJ considered Dr. Leavitt's evaluation,

30

as discussed, he determined that it should be afforded no
weight, and that decision is supported by substantial evidence.

Because the ALJ determined that plaintiff's mental
impairments resulted in no more than moderate difficulties in
functioning and that her mental impairments did not meet or
equal a listing when considering the Dr. Leavitt evidence, the
ALJ did not find that Dr. Leavitt's evaluation would change the
state agency expert's opinion that plaintiff met or equaled a
listing when considering the additional evidence.  See Starcher,
No. 1:12-01444, 2013 WL 550494 at *7.

Accordingly, the court finds no basis to disturb the
discretionary determination by the ALJ that the medical evidence
of record would not change Drs. Logan or Hursey's findings that
plaintiff did not meet or equal a listing.  See Green v. Astrue,
Civil Action No. WGC-09-2897, 2011 WL 1542505, at *8 (D. Md.
Apr. 21, 2011) (noting that it is the ALJ's responsibility to
determine whether a listing has been met or equaled and
accordingly finding no error for failure to obtain an updated
medical opinion where substantial evidence supported that step
three determination and the ALJ "did not find that the post-
reconsideration level medical evidence may change the state
agency medical consultants' findings").  The ALJ's decision not

31

to obtain an updated medical opinion is supported by substantial evidence.

### IV.   Conclusion

For the reasons set forth above, and having reviewed the record de novo, the court ORDERS as follows:

1.  That the PF&R be, and it hereby is, adopted and incorporated herein;

2.  That plaintiff's objections to the PF&R Be, and they hereby are, denied;

3.  That the decision of the Commissioner be, and it hereby is, affirmed;

4.  That this action be, and it hereby is, dismissed and stricken from the docket of the court.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: March 31, 2017

John T. Copenhaver, Jr.
United States District Judge

32